FILED & JUDGMENT ENTERED
Steven T. Salata

Aug 02 2013

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **JEMSEK CLINIC, P.A.** | ) | **Case No.: 06-31766** |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| | ) | |
| In Re: | ) | |
| | ) | **Case No.: 06-31986** |
| **JOSEPH GREGORY JEMSEK** | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| **BLUE CROSS AND BLUE SHIELD** | ) | **Adversary Proc.** |
| **OF NORTH CAROLINA,** | ) | **No.: 07-3006** |
| | ) | |
| **Plaintiff,** | ) | |
| **Counterclaim Defendant** | ) | |
| **Counterclaim Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEMSEK CLINIC, P.A. AND JOSEPH** | ) | |
| **JEMSEK, M.D. an individual,** | ) | |
| | ) | |
| **Defendants,** | ) | |
| **Counterclaim Plaintiffs** | ) | |
| **Counterclaim Defendants** | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF AND COUNTERCLAIM DEFENDANT'S MOTION FOR A PROTECTIVE ORDER.

THIS MATTER came before the Court on a Motion for a Protective Order filed by Blue Cross Blue Shield of North Carolina ("BCBSNC") on April 25, 2013. Joseph Jemsek, M.D. ("Dr. Jemsek") and the Jemsek Clinic, P.A. (the "Jemsek Clinic," and collectively with Dr. Jemsek, the "Jemsek Defendants") filed a response in opposition to the Motion on May 7, 2013. Both sides briefed these matters prior to the hearing, held on May 14, 2013.

## I. PROCEDURAL HISTORY AND FACTS

At the hearing, this Motion was presented upon generally uncontested facts, mostly documentary evidence gleaned from court records and from correspondence between counsel for the parties. Neither side presented live witness testimony, although several supporting affidavits were presented without objection.

### A. The Adversary Proceeding

This Action began in September 2006 when BCBSNC sued the Jemsek Defendants in North Carolina Superior Court. *Blue Cross and Blue Shield of North Carolina v. Jemsek Clinic, P.A. & Joseph G. Jemsek, M.D.*, No. 06-CVS-18432. BCBSNC's claims arise from medical treatments provided by the Jemsek Defendants to BCBSNC members suffering from Lyme disease. Removed Compl., 9-15, ECF No. 2 (the "Complaint"). Shortly after the Superior Court case was filed, the Jemsek Defendants filed Chapter 11 and removed the state action to this Court.

BCBSNC asserts that the Jemsek Defendants improperly submitted and were paid for hundreds of insurance claims for these patients. The Complaint seeks recovery of all sums previously paid to the Jemsek Defendants and damages under a variety of legal

theories. The Action originally involved nine claims brought by BCBSNC against the Jemsek Defendants, including breach of contract, fraud, unfair trade practices, negligent misrepresentation, among other state law claims. Removed Compl., Ex. A, Part 3, ECF No. 2.

The Jemsek Defendants, in-turn, asserted eight counterclaims against BCBSNC, ranging from breach of contract to tortious interference with a business relationship. Jemsek Defs.' Ans. and Countercl., ECF No. 5. The Counterclaims seek an affirmative recovery from BCBSNC in excess of twenty million dollars ($20,000,000). *Id*. at 28.

Since the original pleadings were filed, however, the scope of the issues to be resolved in this litigation has narrowed. Now only two claims remain at issue: the Jemsek Defendants' counterclaims for tortious interference and defamation. *See* ECF No. 124. The Adversary Proceeding has been vociferously litigated and, despite best efforts to move the matter along, remains in its discovery phase.

**B. The 30(b)(6) Deposition Notice and Motion for Protective Order**

The Jemsek Defendants first served BCBSNC with a 30(b)(6) deposition notice (the "Notice") on April 18, 2013. On April 24, 2013 counsel for BCBSNC and the Jemsek Defendants held a telephone conference to discuss BCBSNC's issues with the Notice. It was then agreed that the Jemsek Defendants would draft an amended 30(b)(6) notice and serve it on BCBSNC after it was prepared. Later that evening, BCBSNC filed the present Motion seeking to limit the scope of the 30(b)(6) deposition. ECF No. 255.

On April 29, 2013, the Jemsek Defendants served BCBSNC with an Amended 30(b)(6) Notice (the "Amended Notice") that resolved some of the disagreements occasioned by the original notice. However, the Amended Notice also included several

new subjects, which expanded the total number of potential deposition topics from thirty-six (36) to forty-two (42).  On April 30, 2013, BCBSNC sent the Jemsek Defendants an email outlining its objections to the Amended Notice.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 26(b)(1), and Bankruptcy Rule 7026, parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense."

A court may, for good cause, issue a protective order to protect a party from oppression or undue burden or expense during discovery.  Under Rule 26(c), "[w]hen the discovery sought appears relevant, the *party resisting the discovery* has the burden to establish the lack of relevancy by demonstrating that the requested discovery: (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1); or (2) is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure."  *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004) (emphasis added).

Alternatively, "when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the *party seeking discovery* has the burden to show the relevancy of the request."  *Cunningham v. Std. Fire Ins. Co.*, No. 07-cv- 02538-REB-KLM, 2008 WL 2668301, at *4 (D. Colo. Jul. 1, 2008) (emphasis added).

## III. DISCUSSION

### A.  Global Objections

BCBSNC's objections to the topics in the Amended Notice generally fall into four categories:

4

1. The topics seeking information relating to dismissed claims are not relevant to the two remaining counterclaims.
2. The topics are overbroad temporally.
3. Certain topics are vague, overly broad, lack specificity, and/or are unduly burdensome.
4. Topics relating BCBSNC's document retention policies and document collection and production efforts are irrelevant.

This Court will first address BCBSNC's global objections and then consider the ruling in relation to the topics listed in the Amended Notice.

### 1.  Topics Seeking Information relating to the Dismissed Claims are not Relevant to the two Remaining Counterclaims.

BCBSNC has objected to a number of proposed deposition topics[1] arguing that they relate to dismissed claims and are not relevant to the Jemsek Defendants' remaining defamation and tortious interference counterclaims.   More specifically, BCBSNC contends that since the Jemsek Defendants have withdrawn their contract-based claims, (those premised on BCBSNC's allegedly improper denials of Dr. Jemsek's claims for reimbursement), these matters are no longer relevant.

Contrary to BCBSNC's assertion, and due to the interrelated nature of these counterclaims, we cannot simply assume that matters touching on dismissed counterclaims are, per se, irrelevant to the Jemsek Defendants' remaining counterclaims and BCBSNC's defenses thereto.

To prove their claim for defamation, the Jemsek Defendants must prove that BCBSNC caused injury to the Jemsek Defendants by making false, defamatory statements of or concerning the Jemsek Defendants, which were published to a third person.  *Morgan v. Moug*, No. 3:07-CV-374-C, 2008 WL 1733623, at *5 (W.D.N.C. April 10, 2008) (*citing Craven v. Cope*, 188 N.C. App. 814, 816 (2008)).   Likewise, for tortious interference, the

---

[1] Topics 17, 25, 26, 27, 30, 41, and 42

sabel

Jemsek Defendants must prove that: (1) they had a valid contract with a third party which conferred upon the Jemsek Defendants a contractual right against the third party, (2) BCBSNC knew of that contract, (3) BCBSNC intentionally induced the third party not to perform the contract, (4) without justification, (5) which resulted in actual damage to the Jemsek Defendants. *See Blue Ridge Pub. Safety Inc., v. Ashe,* 712 F. Supp. 2d 440, 447 (W.D.N.C. 2010) (*citing Holleman v. Aiken,* 193 N.C. App. 484, 500 (2008)). Both claims necessarily require communications with third parties.

The premise of the Jemsek Defendants' counterclaims, including those previously dismissed, is that the Jemsek Defendants provided medically effective and compensable treatments to their BCBSNC member/patients; that BCBSNC was aware of the medical effectiveness of these treatments, but, seeking to limit the amount of money it would have to pay for such medical treatments to member/patients suffering from Lyme disease, BCBSNC: (a) terminated its contracts with Dr. Jemsek; (b) terminated its Provider Agreements with the Jemsek Defendants; and (c) attempted to discredit Dr. Jemsek to third parties, including patients, other health care entities, the North Carolina Medical Board, and the public. Subparts (a) and (b) are the basis of the now dismissed contractual counterclaims. Subpart (c) is the basis of the surviving defamation and tortious interference counterclaims.

It is true, as BCBSNC suggests, that, "it is proper to deny discovery of a matter that is relevant only to claims or defenses that have been stricken, or to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 352 (1978). However, the converse is also true: if a matter is relevant to pending claims in a case, the fact that it may also relate to dismissed or unpled claims does not make the matter nondiscoverable.

Here, the two sets of counterclaims arise from common factual circumstances. The claims themselves are legally related.  Therefore, to the extent that the topics identified by the Amended 30(b)(6) Notice are relevant to the Jemsek Defendants' defamation and tortious interference claims, and unless privileged, these matters are discoverable.

### 2.  The Topics are Overbroad Temporally.

Next, BCBSNC argues that *all* of the Jemsek Defendants' proposed topics are temporally overbroad because they do not contain any time limitations (e.g., "BCBSNC's adoption of a policy relating to the reimbursement of treatments for Lyme disease," Topic 27) or because they request information for time periods unrelated to the case. (e.g., "BCBSNC's document retention policies from 2003 to the present…," Topic 4).  BCBSNC suggests that general discovery topics should be limited to the periods falling within the statute of limitations for the two remaining counterclaims; one year for defamation (N.C.G.S. §1-54) and three years for tortious interference, (N.C.G.S. §1-52).  For document preservation issues, BCBSNC posits the proper period is from July 1, 2006, the date previously held that BCBSNC reasonably should have anticipated litigation with the Jemsek Defendants, until the action was filed.  BCBSNC further asserts that discovery should not be permitted on events occurring *after* the Jemsek Defendants filed their counterclaims.  According to BCBSNC, the general discovery period should be from January 24, 2004 to January 24, 2007, and for document preservation discovery, the period should be July 1, 2006 to January 24, 2007.

The Jemsek Defendants object to any such limitations, arguing that Rule 26(b)(1) contains no such temporal restrictions.

This Court agrees in part with each side, but not fully with either.

BCBSNC is correct that a lack of temporal reference points renders the Jemsek Defendants' proposed topics overbroad. When a topic for a Rule 30(b)(6) deposition is overbroad, "the responding party is unable to identify the outer limits of the areas of inquiry noticed, and designating a representative in compliance with the deposition notice becomes impossible." *Lipari v. U.S. Bancorp*, *N.A*, No. 07-2146-CM-DJW, 2008 WL 4642618, at *5 (D. Kan. Oct. 16, 2008). That is certainly the case with these proposed topics. Most contain no definition whatsoever of the relevant points in time. The business relationship between the Jemsek Defendants and BCBSNC extends over several years (since 2000) and encompasses thousands of patients and claims. Without some refinement of the time periods as to which matters the Jemsek Defendants' 30(b)(6) deponee(s) are to testify, it will be impossible for BCBSNC to prepare for deposition.

On the other hand, this Court agrees with the Jemsek Defendants that a matter is not per se immune from discovery simply because it occurred outside the statute of limitations. Nor is there a per se exclusion from discovery of matters transpiring after the counterclaims were filed. "Federal Rule of Civil Procedure 26(b)(1) does not impose any limitation discovery of matters that occur after the date the complaint [or counterclaims] are filed." *Pershing Pac. West, LLC v. MarineMax, Inc.,* No. 10-CV-1345-L(DHB), 2013 WL 941617, at *5 (S.D. Cal. March 11, 2013); *see also S.W. Hide Co. v. Goldston*, 127 F.R.D. 481, 484 (N.D. Tex. 1989) (noting that "there is no per se rule barring discovery regarding events which occur after an action is filed").

As those cases note, under Rule 26(b)(1) and Bankruptcy Rule 7026, information is discoverable if it is 'relevant to any party's claim or defense' or 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Pershing*, 2013 WL 941617,

at *5 (*citing* F.R.C.P. Rule 26(b)(1)). Artificial restrictions, such as the temporal limitation BCBSNC suggests, "…should be rejected." *King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 7 (D.D.C. 1987).

BCBSNC's reliance on *Young-Henderson v. Spartanburg Area Mental Health Ctr.* in support of its argument that the Jemsek Defendants must supplement or amend their counterclaims before obtaining discovery on post-filing events is misplaced. 945 F.2d 770 (4th Cir. 1991). That case holds that "*as a general rule,* facts accruing after the suit is brought may not be inserted by way of amendment but must be added by supplemental pleading." *Id.* at 775 (emphasis added). However, the *Young-Henderson* holding is not a delineation of the scope of permissible discovery as to post filing matters. Rather, that case speaks to whether a complaint can be amended by implication to add causes of action based upon a party's "honest response to an interrogatory." *Id.* As the Fourth Circuit has held, a discovery response is not sufficient to assert a legal claim. *Id.*

Here, the Jemsek Defendants are not seeking to introduce new counterclaims through discovery. Rather, they are seeking discovery about their present counterclaims based upon information and events transpiring after their counterclaims were filed. *Young-Henderson* does not control this issue.

This does not mean matters occurring outside the statute of limitations or after the action is brought are automatically discoverable either. Under the general relevance rule of Rule 26(b)(1), most such matters will either be irrelevant or privileged (as either work product or attorney-client privilege), and hence nondiscoverable. However, they simply cannot be automatically deemed to be immune from discovery. Potentially, an event, document, or communication falling outside the statute of limitations or after the

counterclaims were filed could have an effect upon, or reflect, something that happened during the statute of limitations period.  For example, if, as the Jemsek Defendants suggest, BCBSNC changed its Lyme disease policy prior to the statute of limitations period to limit its costs, and then applied that policy to the Jemsek Defendants' claims during the statute of limitations period, that topic would relate to an element of the remaining counterclaims and be discoverable.  Similarly, post filing events and documents "may relate to events occurring prior to the filing of the [counterclaims] bearing on the central issues in this case." *King*, 117 F.R.D. at 7.  As that court notes, "[t]he continuation of a course of conduct, involving false representations or other culpable wrongdoing after a complaint, may have evidentiary significance as to malice or reckless or wanton conduct." *Id*.

This Court will not artificially limit the general relevance rule by woodenly excluding matters based on the date that they occurred.  Each topic must be considered on its own merit, based upon the general relevance discovery rule.

### 3.   Certain Topics are Vague, Overly Broad, Lack Specificity, and/or are Unduly Burdensome.

BCBSNC's next objection is similar. Here the global objection is to a number of topics[2] encompassing broad subjects where the Jemsek Defendants have made little or no attempt to specify the particular issues, facts, communications, or documents about which they seek testimony.  This is a valid objection.  BCBSNC should not be required to guess what issues the Jemsek Defendants actually intend to explore during the deposition.

"[T]o allow [Rule 30(b)(6)] to effectively function, the requesting party must take care to designate, *with painstaking specificity*, the particular subject areas that are

---

[2] Topics 11, 12, 16, 17, 21-23, 24, 28, 29, 31, 34, 35, 37, 38, 39, and 40

intended to be questioned, and that are relevant to the issues in dispute." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000) (emphasis added). Such specificity is lacking in these proposed deposition topics.

For starters, the Jemsek Defendants' Amended Notice frequently requests testimony on topics using "including but not limited to" language. Each such topic is overbroad on its face and must be clarified or limited. *See Richardson v. Rock City Mech. Co.*, No. 3-09-0092, 2010 WL 711830, at *10 (M.D.T.N. Feb. 24, 2010) (stating, "topics in a rule 30(b)(6) notice are themselves overbroad if they include 'including but not limited to' language"); *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 125 (D.D.C. 2005) (finding topics overbroad due to "including but not limited to" language and stating, "[l]isting several categories and stating that the inquiry may extend beyond the enumerated topics defeats the purpose of having any topics at all").

Additionally, several topics request unspecified "communications" with various parties. The Jemsek Defendants are entitled to conduct discovery regarding relevant communications; however, as currently worded, these topics are extremely vague and overbroad. As several courts have held, blanket requests for testimony regarding unidentified "communications" do not meet the 'reasonable particularity standard.' *See Richardson*, 2010 WL 711830, at *9 (ordering the plaintiff to revise his deposition topics "to focus on the information he really seeks in contrast to all communications, in whatever form…."); *Phoenix Life Ins. Co. v. Raider-Dennis Agency, Inc.*, 07-CV-15324, 2010 WL 4901181, at *3 (E.D. Mich. Nov. 24, 2010), (striking topics seeking "all communications because "[t]he burden of this far-reaching topic far outweighs its likely benefit.").

Here, some of the proposed topics encompass thousands of potentially irrelevant communications.  For example, every claim for reimbursement submitted by the Jemsek Defendants requires some "communication," whether made as part of the "Inter-Plan Program" or to patients via EOBs.  BCBSNC should not be required to expend the time and resources to attempt to prepare designees about all "communications," nor should it have to guess about which communications the Jemsek Defendants want testimony.

As noted above, the transactions between these parties, their patients/members, and third parties are voluminous; their dealings spanned a period of years.  Meanwhile, BCBSNC, as a health insurer, conducts its business with hundreds, if not thousands of doctors, their patient/members, and hundreds of thousands of claims.  Nevertheless, the proposed topics seek 30(b)(6) testimony about all such matters with little or no limitation of the subject matter.  As presently drafted, preparing a witness(es) to give 30(b)(6) testimony on these topics would be impossible.

A few of the proposed topics don't even limit the scope of inquiry to persons or matters pertaining to this action. (e.g.,"The use of Nexic Discovery Client by BCBSNC," Topic 37).  As to these, apparently discovery of all of BCBSNC's business affairs is sought.  Such topics are overbroad and must be refined.

Since a responding party potentially faces sanctions for failing to adequately prepare a corporate representative to testify on its behalf, it is essential that the requesting party identify with "reasonably particularity" the information that it wants corporate testimony about.  *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506 (D.S.D. 2009).  Here, the Jemsek Defendants will need to specify as much as possible the desired areas of inquiry to enable BCBSNC to provide the informed testimony.  Without such specification, given

the breadth of these topics and the thousands of communications and documents that have been produced, this Court would be hard pressed to sanction BCBSNC if its Rule 30(b)(6) designee(s) was unprepared for some of the Jemsek Defendants' questions.  In short, to the extent possible, the Jemsek Defendants need to tell BCBSNC what they want to talk about.

### 4.   Topics relating to BCBSNC's Document Retention Polices and its Document Collection and Production Efforts are Irrelevant.

Several of the proposed deposition topics[3] relate to BCBSNC's document retention policies and its efforts in identifying, preserving, collecting, and producing documents in this case.  BCBSNC asserts that these topics are either not relevant or that the Jemsek Defendants are not entitled to discovery on these issues unless they first make a threshold showing that any relevant documents were not preserved or produced.  The Jemsek Defendants disagree, arguing that a party's document retention policies are within the ambit of discovery.  They also suggest that that certain lost documents or missing attachments demonstrate a need for such an inquiry.  In short, the Jemsek Defendants believe there is a spoliation issue here that needs to be explored.

The applicable burdens under Rule 26(c) have been previously noted.

The Jemsek Defendants are entitled to explore document retention issues, but only as they relate to their remaining counterclaims, and only as to periods after a duty to retain documents arose, meaning after July 1, 2006 (when this Court has held litigation with the Jemsek Defendants could have been reasonably anticipated).

As written, however, the Jemsek Defendants seek much more than this.  They would explore BCBSNC's document retention policies long before litigation between

---

[3] Topics 2, 4, 8, 9, and 10

these parties was likely (e.g., Topic 1(a), inquiring about policies dating back to 2003), in other lawsuits (Topic 1(a) and 2), and as to BCBSNC's general course of business after it implemented a litigation hold for the Jemsek Defendants (Topic 4).   The Jemsek Defendants freely admit the purpose of these inquiries is to attempt to develop the spoliation issue.

Various courts have held that such non-merits-based discovery is improper when the requesting party has not made a threshold showing that spoliation has actually occurred.  *See Cunningham v. Std. Fire Ins. Co.*, No. 07-cv-02538-REB-KLM, 2008 WL 2668301, at *5 (D. Colo. Jul. 1, 2008) (finding that the plaintiff's general assertion that he received fewer e-mails in discovery than he believed existed was insufficient to bring defendant's document preservation efforts within the scope of discovery); *Martin v. Allstate Ins. Co.*, __ F.R.D. __, 2013 WL 1352070, at *1-2 (N.D. Tex. Apr. 4, 2013) (disallowing discovery on document retention policies when there was no evidence to support the Plaintiff's argument that the Defendants may have additional documents it had not produced and Defendant's explanation for the manner in which it produced documents was plausible).

To prove spoliation, a party must show:

(1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable fact finder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009).

The Jemsek Defendants argue that the spoliation threshold has been met because

14

BCBSNC "cannot find" a relevant May 28, 2007 email from BCBSNC CEO Bob Grecyzn to Steve Gammarino of the Blue Cross and Blue Shield Association. *See* March 27, 2013 email from Chad Hansen to Bill Blakely, Ex. 3, ECF No. 262. The Jemsek Defendants assert that this e-mail is relevant to this case because a subsequent email response shows Grecyzn's May 28, 2007 email is a communication with a third party relating to the Jemsek Defendants. They further assert that BCBSNC's failure to preserve documents given by BCBSNC to OPM after this action was filed proves this point, as does its failure to provide them with ESI, as argued in the Jemsek Defendants' Motion to Compel. *See* Defs.' Opp'n to Pls.' Mot. for Protective Order 7, Ex. 5, ECF No. 262; Defs.' Mot to Compel and Mem. in Supp. of Mot. to Compel, ECF Nos. 252 and 253.

The loss of one potentially relevant e-mail among thousands that BCBSNC has produced does not meet the burden. Given the vast number of documents produced in discovery, the loss of a single email is hardly surprising; nor is it probative of spoliation. Similarly, the OPM documents are isolated non productions of post suit documents and are likely irrelevant and privileged. The ESI matter and the contention that BCBSNC misled that Jemsek Defendants about the same will not do. As the Order Denying the Motion to Compel states, ESI was not even requested in discovery and the Jemsek Defendants' theory that BCBSNC misled them about its existence was found to be unsubstantiated.

The proposed line of questioning is simply not relevant to the remaining counterclaims and defenses, and the Jemsek Defendants have not made a showing that willful spoliation has occurred.

The cases the Jemsek Defendants cite do not suggest otherwise. For example, the Jemsek Defendants cite *Doe v. District of Columbia* for the proposition that "Rule 26(b)(1) *may* be construed to allow for discovery of document production policies and procedures in allowing 'parties [to] obtain discovery regarding any matter, . . . including the existence, description, nature, custody, condition, and location of any . . . documents.'" 230 F.R.D. 47, 56 (D.D.C. 2005) (emphasis added). While the Jemsek Defendants cite this statement as if it were the general rule of such matters, it is not. The operative word in that statement is *may*; it is not *shall*.

*Newman v. Borders,* a case authored by the same Magistrate Judge is based on the same logic. 257 F.R.D. 1 (D.D.C. 2005). The Magistrate Judge admitted that "a party's document retention policies…*may* be a fit subject of discovery," but based upon his "unquestioned right (if not the duty) to bring discovery disputes to a just and inexpensive conclusion," limited the Defendants venture into this area. *Id.* at 3. Once again, the operative word is *may*. Further, the presiding Judge, after making this statement, castigates the moving party for engaging in overblown discovery, stating, "I am well past being convinced that the potential legal fees in this case, thanks to the many discovery disputes, will dwarf the potential recovery." *Id.* He then short-circuits that party's attempt to expand discovery into the document production area. Rather than permit depositions into this attenuated area, that court simply allowed the other side to file an affidavit describing its general document production policies. *Id.*

While *Doe* and *Newman* involved a far narrower scope of potential discovery than the present dispute, Magistrate Judge John Facciola's two decisions are consistent with the general rules that (1) discovery must be relevant, and (2) that before spoliation

discovery is undertaken, the moving party must show that it has occurred.  In this case, the Jemsek Defendants' proposed foray it is so broad, so expensive, and so attenuated that it should be disallowed under Rule 26 as of marginal relevance compared to potential harm to BCBSNC.

Apart from those document retention topics to which BCBSNC has not objected (e.g., For Topic 1 regarding the 2003 Litigation Hold, BCBSNC has stated that it has no objection to discovery as to subparts (b)-(j) from July 1, 2006 through the filing of the Jemsek Defendants' counterclaims.), the proposed deposition discovery is simply too far afield from this litigation to be undertaken.  With no real proof that documents and information were willfully destroyed, this Court will not authorize an inquiry of such breadth and certain expense.

### B.  BCBSNC's Specific Objections

With this, we now turn to the specific proposed topics.

### 1.  Topic 1: Strike in Part; Allow in Part

Topic 1 relates to "[t]he Litigation Hold allegedly put in place by BCBSNC in August 2003, as referenced in BCBSNC's Second Supplemental Response to the Jemsek Defendants' First Production Request, Attachments 1 and 2 hereto, including: (a) when and for what contested matter was the Litigation Hold established[.]"  BCBSNC only objected to subpart(a), pointing out that this Court already ruled on January 12, 2012 that BCBSNC is not required to identify the matter that this Litigation Hold originally related to. At that time, the Court stated "[t]his is just too far off and too nebulous at the present time…I think those matters that have already been decided and we don't need to revisit them now." (1/24/12 Hearing Tr. at 27:6-15). However, the Court also left open the

possibility of revisiting the issue later on.

After revisiting the issue, the Court reaffirms its earlier ruling and strikes Topic 1(a).  Since BCBSNC has not objected discovery concerning subparts (b)-(j) and from July 1, 2006 through the filing of the Jemsek Defendants' counterclaims, the remainder of Topic 1 is allowed.

### 2.   Topic 2: Strike

Topic 2 requests information regarding an Agreed Order in *Kenneth A. Thomas v. Blue Cross Blue Shield, et al,* No. 03-21296-CIV-Moreno/Klein. The Thomas case is the Florida MDL class action whose settlement forced dismissal of the Jemsek Defendants contract based counterclaims.  BCBSNC has never indicated any reliance on this Agreed Order to preserve documents in that separate litigation.  BCBSNC's compliance with this order is irrelevant to the two remaining counterclaims. Thus, Topic 2 shall be stricken.

### 3.   Topic 3: Strike in Part; Allow in Part

Topic 3 relates to BCBSNC's use of a Data Archiving Environment to preserve documents.  This topic relates to the Jemsek Defendants' spoliation theory that was rejected in Section A.4.  However, BCBSNC has not objected to discovery on this topic from July 1, 2006 through the filing of the Jemsek Defendants' counterclaims, and as relating to this litigation.  To this extent, the Topic is allowed.

### 4.   Topic 4: Strike

Topic 4 requests information on BCBSNC's ordinary document retention policies dating back to 2003.

This inquiry is a part of the Jemsek Defendants' spoliation theory which was rejected in Section A.4.  Discovery of BCBSNC's document retention procedures relating

Case 07-03006   Doc 279   Filed 08/02/13   Entered 08/02/13 16:27:33   Desc Main
Document    Page 19 of 33

to the Jemsek Defendants, and for the period from July 1, 2006 forward is appropriate. However, since a litigation hold specific to the Jemsek Defendants was in place during this time, the insurer's ongoing, non-Jemsek Defendant document retention policies would appear to be irrelevant. This Topic is stricken.

### 5.  Topic 5:  Allow

Topic 5 requests information regarding the "steps taken by BCBSNC to complete its Initial Disclosures … including whether there was a review or search of any Data Archiving Environment."   BCBSNC objects to this topic to the extent it requests information on whether there was a review of its data archiving equipment, asserting that there is no requirement in Rule 26(a)(1) that a party search its document retention systems prior to making its initial disclosures.  Rather, all the Rule requires BCBSNC to do with regard to documents is to provide "a description by category" and "location" of electronic and paper documents that BCBSNC "may use to support its claims or "defenses." Fed. R. Civ. P. 26(a)(1).

Although the Rule only requires BCBSNC to provide a description by category and location, if BCBSNC did indeed conduct a search of the Data Archiving Equipment to complete its Initial Disclosures, and assuming that the information is not otherwise privileged, then the Jemsek Defendants are entitled to ask about it.   This Topic is allowed.

### 6.  Topic 6: Allow

Topic 6 seeks testimony on "steps taken to respond to the Jemsek Defendants' discovery requests, including whether there was a review or search on any data archiving equipment."  BCBSNC does not object to this topic as long as the questions are limited to

the aforementioned time frame and are related to the remaining claims.

As the question relates to discovery requests, the applicable time frame is already limited to periods after this action was filed.  As discussed above, the Jemsek Defendants are entitled to discovery on any nonprivileged matters that are relevant to the defamation and tortious interference counterclaims.  As such, the Topic will not be per se limited to the remaining counterclaims.  This Topic is allowed.

### 7.  Topic 7: Allow

Topic 7 seeks information on BCBSNC's identification, preservation, and collection of documents relating to the claims and defenses of this lawsuit.  BCBSNC does not object to this Topic provided the questions are limited to the remaining counterclaims and to the process BCBSNC undertook regarding the same.

Again, unless privileged, the Jemsek Defendants are entitled to discovery on any matters that relate to the elements of defamation and tortious interference.  The Topic will not be artificially limited to the remaining counterclaims.

### 8.  Topic 8: Strike

Topic 8 requests information on whether any documents responsive to, or potentially responsive to, the Jemsek Defendants' discovery requests have been deleted or destroyed.  BCBSNC argues this line of questioning is aimed at trying to manufacture a spoliation issue.

This Court agrees and for the reasons previously stated, concludes that the spoliation inquiry is not warranted.  This Topic is stricken.

### 9.  Topic 9: Strike

Topic 9 seeks testimony on "the processing and production of documents…

including "any alteration or removal of metadata."

This, too, is a part of the Jemsek Defendants' spoliation theory and is subject to the same ruling. The inquiry about metadata is particularly "over the top", since as described in the Order Denying the Jemsek Defendants's Motion to Compel (entered contemporaneously with this ruling), these parties did not seek discovery of metadata from BCBSNC until after the written discovery period had ended. This Topic is stricken.

### 10. Topic 10: Strike

Topic 10 requests information on "storage, preservation, and production of 418 Excel spreadsheets produced to the Jemsek Defendants on April 1, 2013."

The relevance of this Topic to the two remaining counterclaims is not apparent and Jemsek Defendants have failed to make the requisite showing of how it could be relevant. The Jemsek Defendants have not even alleged that BCBSNC did anything wrong in storing, preserving, or producing these spreadsheets. This, too, would simply appear to be a part of the Jemsek Defendants' unsubstantiated theory that BCBSNC destroyed documents to prevent their discovery. This Topic is stricken.

### 11. Topic 11: Allow, under the Guidelines Noted above. Further Specification Required.

Topic 11 seeks "communications between BCBSNC and the National Healthcare anti-Fraud Association regarding the Jemsek Defendants." BCBSNC reasserts its global objections. This Topic is allowed subject to the guidelines discussed above. However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

**12. Topic 12: Allow, under the Guidelines Noted above.   Further Specification Required.**

Topic 12 seeks communications between BCBSNC and the OPM regarding the Jemsek Defendants.  BCBSNC reasserts its global objections.  This Topic is allowed subject to the guidelines discussed above.  However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

**13. Topic 13: Allow, under the Guidelines Noted above.   Further Specification Required.**

Topic 13 seeks testimony on BCBSNC's responses to Requests for Admissions served by the Jemsek Defendants in this matter.  BCBSNC reasserts its global objections. This Topic is allowed subject to the guidelines discussed above.  However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

**14. Topic 14: Allow, under the Guidelines Noted above.   Further Specification Required.**

Topic 14 seeks testimony regarding the inspection of BCBSNC documents relating to the Jemsek Defendants by personnel from or representing the OPM, FBI, NC Dept. Insurance, or any other governmental entity, at any time.  BCBSNC reasserts its global objections.  This Topic is allowed subject to the guidelines discussed above. However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

**15. Topic 15: Allow, under the Guidelines Noted above.   Further Specification Required.**

Topic 15 seeks testimony on the documents the delivered by BCBSNC to OPM and produced by BCBSNC to the Jemsek Defendants on April 5, 2013, including

BCBSNC's production of documents to OPM and OPM's production of the documents back to BCBSNC.  BCBSNC reasserts its global objections.  This Topic is allowed subject to the guidelines discussed above.  However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

16. **Topic 16: Allow, under the Guidelines Noted above.   Further Specification Required.**

Topic 16 seeks communications between BCBSNC CEO Bob Greczn and any third party relating to the Jemsek Defendants.  BCBSNC reasserts its global objections. This Topic is allowed subject to the guidelines discussed above.  However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

17. **Topic 17: Allow, under the Guidelines Noted above.   Further Specification Required.**

Topic 17 seeks communications by BCBSNC relating to the existence of Lyme disease in North Carolina.

For the reasons stated in Section A, this topic is vague and very overbroad.  It potentially encompasses thousands of irrelevant communications and is not temporally defined whatsoever.  Processing each insurance claim related to Lyme disease necessarily requires "communication."   The burden of preparing a representative on all communications relating to Lyme disease outweighs its likely benefit, considering the extensive discovery that has already occurred in the case, and given that BCBSNC agrees Lyme disease exists in North Carolina.  *See* Hansen e-mail, dated April 30, 2013, Ex. 6, ECF No. 264.

The Jemsek Defendants may seek discovery on this topic, however, they must

sharply focus their inquiry to not just to identify the e-mails, correspondence and other communications that they seek, but also to illustrate the relevance of this topic in this litigation.  This Topic must be revised in accordance with the time, relevance, and specificity guidelines established above.

### 18. Topic 18: Allow, under the Guidelines Noted above and only as Related to the Jemsek Defendants.  Further Specification Required.

Topic 18 seeks information on BCBSNC's use of "Tumbleweed, Wellpoint, Secure Mailer, or any other communications software whereby communications are encrypted, altered, self-destructed, or deleted after access."

This Topic is allowed subject to the guidelines discussed above and only as related to the Jemsek Defendants.  However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

### 19. Topic 19: Strike

Topic 19 seeks information on BCBSNC's alleged "withholding" of payments to the Jemsek Defendants, which was denied by the letter of C. Hansen to W. Blakely on Feb. 22, 2013.

The relevance of this topic to the two remaining counterclaims is not apparent, and Jemsek Defendants have failed to make the requisite showing of how it is relevant. This Topic is stricken.

### 20. Topic 20: Strike

Topic 20 seeks information related to an allegation by the Jemsek Defendants that BCBSNC has not denied claims for reimbursement that *are still pending*.

The relevance of this Topic to the two remaining counterclaims is not apparent, and Jemsek Defendants have failed to make the requisite showing of how it is relevant.

This Topic is stricken.

21. **Topic 21: Allow, under the Guidelines Noted above.   Further Specification Required.**

Topic 21 seeks testimony concerning communications between BCBSNC and any third parties relating to the BCBS Inter-Plan program and the Jemsek Defendants' requests for reimbursement.   BCBSNC reasserts its global objections, particularly as to temporal and topical over breadth.

This Topic is allowed subject to the guidelines discussed above.   However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

22. **Topic 22: Allow, under the Guidelines Noted above.   Further Specification Required.**

Topic 22 seeks communications between BCBSNC and the FEP relating to the Jemsek Defendants, including, but not limited to reimbursements for medical services provided by the Jemsek Defendants to patients Karen Lilly and Brian O'Conner. BCBSNC asserts its global objections, particularly as to temporal and topical over breadth.

As currently worded, this Topic is vague and very overbroad.   It is allowed subject to the guidelines discussed above.   However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

23. **Topic 23: Allow, under the Guidelines Noted above.   Further Specification Required.**

Topic 23 seeks communications between BCBSNC and the State Health Plan of North Carolina relating to the Jemsek Defendants.   BCBSNC asserts its global objections, particularly as to temporal and topical over breadth.

As currently worded, this Topic is vague and overbroad.  It is allowed subject to the guidelines discussed above.  However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

### 24. Topic 24: Allow, under the Guidelines Noted above.   Further Specification Required.

Topic 24 requests numerous, but non-specific, details about investigations by BCBSNC's Special Investigations Unit ("SIU") of the reimbursement claims made by the Jemsek Defendants.  BCBSNC does not contend that this topic is irrelevant; however, like "communications" topics, BCBSNC argues that, this Topic, as drafted, is vague and overbroad.

This is true. SIU reviewed countless claims submitted by the Jemsek Defendants over as much as a three-year period.  Numerous individuals were involved in these investigations, several of whom have already been deposed in this case, including: Sharon Crisp, the lead SIU investigator for Jemsek's claims (deposed 10/20/07); Fred Holt, the BCBSNC medical director in charge of the medical review of Jemsek's claims for reimbursement (deposed 10/25/07); and Jackie Wynne, the director of medical policy responsible for developing BCBSNC's Lyme disease policy (deposed 10/23/07).

Hundreds of documents have been produced in written discovery regarding these investigations.  BCBSNC cannot reasonably prepare a representative to testify about the minutiae of the SIU investigations without some further delineation by the Jemsek Defendants.

This Topic is relevant, and provided that they are not privileged, these investigations are discoverable. It is allowed subject to the guidelines discussed above.

However, the Jemsek Defendants need to sharply focus this Topic, to identify with all possible specificity the particular SIU investigations about which they seek testimony.

**25. Topic 25: Allow, but only as Related to Incentive Compensation of Employees.**

Topic 25 seeks the compensation of BCBSNC's SIU employees who were involved in the investigation of the Jemsek Defendants, including any bonuses or incentives offered and/or given for performance. BCBSNC argues that such matters are irrelevant to the remaining counterclaims.

This Topic is allowed under the guidelines discussed above, but only as to whether the SIU employees received additional, bonus or incentive compensation relating to performance on the Jemsek case and the particulars of the same. The SIU employee's regular compensation is irrelevant.

**26. Topic 26: Allow, under the Guidelines Noted above.   Further Specification Required.**

Topic 26 seeks information on BCBSNC's audits of the Jemsek Defendants' Medical Practice relating to applications for reimbursement. BCBSNC argues that such matters are irrelevant to the remaining counterclaims.

As noted, we cannot make such an ipso facto conclusion of irrelevance. The Topic is allowed under the guidelines established above. However, the Jemsek Defendants should identify particular SIU investigations of significance about which they seek testimony.

**27. Topic 27: Allow, under the Guidelines Noted above.   Further Specification Required.**

Topic 27 seeks information on BCBSNC's adoption of a policy relating to treatments for Lyme disease.

This Topic would appear to be potentially relevant to the remaining counterclaims but as currently worded, it is extremely vague and overbroad. It is allowed subject to the guidelines discussed above. However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

**28. Topic 28: Allow, under the Guidelines Noted above. Further Specification Required.**

Topic 28 requests information on the description of any coding made by BCBSNC relative to the claims for reimbursement requested by the Jemsek Defendants, including but not limited to, denial codes, EOB coding, flag codes, the identification of all codes for fraud, suspected fraud, or suspected improper billing, and the "Flag" procedure related to any such coding. BCBSNC asserts its global objections.

This Topic is overbroad insofar as it requests testimony on issues "including but not limited to" certain areas. Otherwise, and under the guidelines noted above, it is allowed. However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

**29. Topic 29: Allow, under the Guidelines Noted above. Further Specification Required.**

Topic 29 seeks communications between BCBSNC and any third parties relating to any flag codes, EOB codes, denial codes, or other internal codes regarding the Jemsek Defendants. BCBSNC reasserts its global objections. This Topic is allowed subject to the guidelines discussed above. However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

30. **Topic 30: Allow, under the Guidelines Noted above.   Further Specification Required.**

Topic 30 seeks information on BCBSNC's Answer to the Jemsek's Defendants' counterclaims, including affirmative defenses.  BCBSNC objects only insofar as it seeks information about dismissed counterclaims.

This Topic is allowed subject to the guidelines discussed above.  However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

31. **Topic 31: Allow, under the Guidelines Noted above.   Further Specification Required.**

Topic 31 requests testimony regarding "BCBSNC's use of Explanation of Benefit remark codes, including the meaning of certain codes."

As worded, this Topic is extremely vague and very overly broad.  The use of EOB codes by a health insurer is a very broad subject area and as drafted, this topic is not even limited to those codes that may have been used in relation to the Jemsek Defendants.  BCBSNC advises that it has numerous EOB codes, many of which have no relation to this case.

This Topic is allowed, but only as it relates to pre-lawsuit codes, and only as to those which were employed in relation to the Jemsek Defendants' claims for reimbursement.  If the Jemsek Defendants have particular codes about which they have questions, they need to identify the same to BCBSNC prior to the deposition(s).

32. **Topic 32: Allow**

Topic 32 seeks information on Code "T 054."  BCBSNC does not object to this Topic and it is allowed.

### 33. Topic 33: Allow

Topic 33 seeks information on Code "E310."  BCBSNC does not object to this Topic, and it is allowed.

### 34. Topic 34: Allow, under the Guidelines Noted above.   Further Specification Required.

Topic 34 requests "Communications between BCBSNC and BCBSNC member patients regarding the Jemsek Defendants, including calls with member patients and written correspondence with member patients." BCBSNC does not dispute that some communications may be relevant. However, BCBSNC argues that, as drafted, the Topic is so vague and overbroad that it cannot possibly prepare a witness to discuss each and every communication (again, meaning every claim and claim determination).

As currently worded, this Topic is vague and overbroad.  It is allowed subject to the guidelines discussed above.  If the Jemsek Defendants have particular communications about which they have questions, they need to identify the same to BCBSNC prior to the deposition(s).

### 35. Topic 35: Allow, under the Guidelines Noted above.   Further Specification Required.

Topic 35 seeks testimony on communications between BCBSNC and the NC Dept. Insurance regarding Jemsek Defendants.  BCBSNC reasserts its global objections. This Topic is allowed subject to the guidelines discussed above.  However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

### 36. Topic 36: Allow, under the Guidelines Noted above. Further Specification Required.

Topic 36 seeks information on BCBSNC's use of the code "U600", including the significance of the code being used with respect to a provider's or member patient's request for reimbursement. BCBSNC reasserts its global objections. This Topic is allowed subject to the guidelines discussed above. However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

### 37. Topic 37: Strike

Topic 37 requests testimony regarding "[t]he use of Nexic Discovery Client by BCBSNC." BCBSNC 's counsel informed the Jemsek Defendants that he has never heard of "Nexic Discovery Client" referred to in this case, and requested that Jemsek Defendants clarify what this is, how they believe it to be relevant to the remaining claims in this case, and which BCBSNC employees, if any, are believed have knowledge of it, so that BCBSNC can determine if this is an appropriate topic for a Rule 30(b)(6) deposition. The Jemsek Defendants never responded to this request for clarification.

The Topic appears to be irrelevant on its face, and the Jemsek Defendants have not made a showing of how it is relevant to the remaining counterclaims. As such, this Topic is inappropriate and is stricken.

*Topics 38-42 are new, having been added in the Amended Notice.*

### 38. Topic 38: Allow, under the Guidelines Noted above. Further Specification Required.

Topic 38 seeks communications between BCBSNC and Partners regarding the Jemsek Defendants. BCBSNC reasserts its global objections. This Topic is allowed subject to the guidelines discussed above. However, with as much specificity as possible,

the Jemsek Defendants need to identify the particular communications about which they have questions, and communicate the same to BCBSNC prior to the deposition(s).

### 39. Topic 39: Allow, under the Guidelines Noted above. Further Specification Required.

Topic 39 requests communications between BCBSNC and Well Pay regarding the Jemsek Defendants. BCBSNC reasserts its global objections. This Topic is allowed subject to the guidelines discussed above. However, with as much specificity as possible, the Jemsek Defendants need to identify the particular communications about which they have questions, and communicate the same to BCBSNC prior to the deposition(s).

### 40. Topic 40: Allow, under the Guidelines Noted above. Further Specification Required.

Topic 40 seeks communications between BCBSNC and the independent medical peer review organization known as MCMC regarding the Jemsek Defendants. BCBSNC reasserts its global objections. This Topic is allowed subject to the guidelines discussed above. However, with as much specificity as possible, the Jemsek Defendants need to identify the particular communications about which they have questions, and communicate the same to BCBSNC prior to the deposition(s).

### 41. Topic 41: Allow, under the Guidelines Noted above. Further Specification Required.

Topic 41 seeks information on BCBSNC's retention of independent medical peer reviewers for review of claims submitted by Jemsek Defendants. BCBSNC maintains this topic pertains to the dismissed, contract based counterclaims but is irrelevant to the two remaining counterclaims.

This Topic is allowed subject to the guidelines discussed above.  However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

### 42. Topic 42: Allow subject to Revisions under the Time, Relevance, and Specificity Guidelines as Noted above.

Topic 42 seeks information on BCBSNC's response to the Jemsek Defendants' interrogatories.  BCBSNC maintains this Topic pertains to the dismissed, contract based counterclaims but is irrelevant to the two remaining counterclaims.

This Topic is allowed subject to the guidelines discussed above.  However, with as much specificity as possible, the Jemsek Defendants need to tell BCBSNC what they want to discuss.

### CONCLUSION

In the face of the foregoing, BCBSNC's Motion for a Protective Order is **GRANTED** in part and **DENIED** in part.  The Jemsek Defendants shall have twenty-one (21) days from the date of this Order to serve a revised version of the Amended 30(b)(6) Notice consistent with this Order on BCBSNC.


**SO ORDERED.**

This Order has been signed electronically.          United States Bankruptcy Court
The judge's signature and the court's seal
appear at the top of the Order.