

FILED & JUDGMENT ENTERED
Steven T. Salata

Feb  06  2015

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **JEMSEK CLINIC, P.A.** | ) | **Case No. 06-31766** |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| | ) | |
| In Re: | ) | |
| | ) | **Case No. 06-31986** |
| **JOSEPH GREGORY JEMSEK** | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| **BLUE CROSS AND BLUE SHIELD** | ) | **Adversary Proc.** |
| **OF NORTH CAROLINA,** | ) | **No. 07-3006** |
| | ) | |
| Plaintiff, | ) | |
| Counterclaim Defendant | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **JEMSEK CLINIC, P.A. AND JOSEPH** | ) | |
| **JEMSEK, M.D. an individual,** | ) | |
| | ) | |
| Defendants, | ) | |
| Counterclaim Plaintiffs | ) | |
| | ) | |

1

## ORDER DENYING PARTIES' CROSS-MOTIONS FOR SANCTIONS

**THIS MATTER** came before this Court on October 29, 2014 on a motion for sanctions filed by Defendants, Joseph Gregory Jemsek, M.D. and the Jemsek Clinic P.A. Plaintiff, Blue Cross and Blue Shield of North Carolina (BCBSNC) responded, and both sides have extensively briefed and argued the following issues.

Like a ping-pong ball, this dispute has bounced between federal courts for the better part of a decade. Indeed, this bankruptcy court, the U.S. District Court in this judicial district, the U.S. District Court for the Southern District of Florida, and the Eleventh Circuit Court of Appeals have all endured this action's resistance to reach a final resolution. Its fate currently rests before the U.S. District Court for this district, which is considering this bankruptcy court's recommended order suggesting that no viable claims remain, any further amendments to the pleadings would be futile, and a final judgment should be entered ending the proceeding. *See* Order of July 29, 2014, Doc. No. 414.

Defendants now request sanctions for a litany of alleged wrongs committed by BCBSNC. BCBSNC counters with its own sanctions demand against Defendants' counsel for what it calls Defendants' meritless motion. Admittedly, the two sides have rampantly driven up the cost of this litigation and often skirted the edges of propriety during this proceeding; however, on this occasion, neither is entitled to an award of sanctions.

2

**Factual Background and Procedural History**[1]

In September 2006, BCBSNC brought suit against Defendants in North Carolina

Superior Court.  *Blue Cross and Blue Shield of North Carolina v. Jemsek Clinic, P.A. &*

*Joseph G. Jemsek, M.D.*, No. 06-CVS-18432.  BCBSNC's claims arose from medical

treatments provided by Defendants to BCBSNC members suffering from Lyme disease.

Complaint, Doc. No. 2 at 9-15.  BCBSNC asserted that Defendants improperly submitted

and were paid for hundreds of insurance claims for these patients.  BCBSNC sought

recovery of all sums previously paid to Defendants and damages under a variety of legal

theories including breach of contract, fraud, unfair trade practices, and negligent

misrepresentation.  Complaint, Doc. No. 2 at Ex. A, Part 3.

Shortly after the Superior Court case was filed, Defendants filed Chapter 11 and

removed the state action to this Court.  On January 24, 2007, Defendants filed their

Answer as well as nine counterclaims against BCBSNC.  The counterclaims ranged from

breach of contract to tortuous interference with a business relationship.  Answer, Doc.

No. 5.  The counterclaims sought an affirmative recovery from BCBSNC in excess of

$20 million.  *Id*. at 28.

After many months of extensive discovery activities, the action took a drastic turn

in March 2008 when BCBNC disingenuously announced that it had "discovered" that the

counterclaims were enjoined by a class action settlement in Florida.[2]  *See Love v. Blue*

---

[1] The unabridged history of this war between a health care insurer and one of its healthcare
providers/physicians is detailed in prior decisions of this court and need not be repeated in its entirety here.

[2] Despite Blue Cross's extensive participation in *Love* as a named party for almost four years, BCBNC
withheld the existence of the class action and settlement from this Court until March 21, 2008, allowing
Defendants to litigate for over a year and unnecessarily expend hundreds of thousands dollars.  As more
fully discussed in this Court's orders dated September 22, 2010 and July 29, 2014, BCBSNC's primary
claims were dismissed with prejudice long ago as a sanction for its acts of "flagrant bad faith" and

*Cross & Blue Shield Ass'n*, No. 03-21296-CIV-MORENO, 2008 WL 4097607 (S.D. Fla.

Sept. 4, 2008) (the *Love* Case and the *Love* Court).  The class action was founded on

allegations quite similar to those made in Defendants' counterclaims.  The *Love*

complaint alleged that BCBSNC and other Blue Cross entities had adopted business

practices intended to systematically deny, reduce, or delay payments to medical providers

in order to reduce the insurers' operating costs.  Notice of the proposed *Love* settlement

had been given to the putative class members on July 27, 2007.  The notice described the

class action, the claims, and the proposed settlement.  It also described the process by

which a party could "opt-out" of the settlement and pursue its claims independently.

Defendants, but not their attorneys, received the *Love* notice.  Being in bankruptcy and

engaged in voracious litigation with BCBSNC in this forum, Defendants failed to

appreciate its significance.  The opt out period expired on September 24, 2007 without

Defendants taking the steps necessary to preserve their counterclaims, participate in the

*Love* settlement, or even realize that action was required.

　　　After announcing its "discovery," BCBSNC sought aid of the *Love* Court, asking

it to enforce the injunction against Defendants.  The *Love* Court obliged, holding that

eight of the ten counterclaims were related to the *Love* "fee for service claims" which had

been settled and enjoined by the class action.  However, two of the counterclaims,

defamation and tortious interference with a business relationship, were permitted to go

forward in bankruptcy court. The defamation claim asserted that BCBSNC had made

untrue, disparaging statements about Defendants to the North Carolina Medical Board

and the Center for Disease Control (the CDC).  The tortious interference cause asserted

---

"disregard for its responsibilities to the courts" related to its nondisclosure of pending "split claims" and
other discovery violations.

that BCBSNC had influenced a Medical Board action against Dr. Jemsek that resulted in

the suspension of his medical license.  The *Love* Court concluded that these two claims

were not related to any "fee for service claim," meaning they fell outside the *Love*

settlement and injunction.  *Love*, at *8.  Defendants appealed the *Love* Court's injunction

to the Eleventh Circuit Court of Appeals and lost.  *See Thomas, et al. v. Blue Cross and

Blue Shield Assn., et al.*, 333 F. App'x 414 (11th Cir. 2009) (unpublished)).

As a result, Defendants were compelled to amend their counterclaims on

December 17, 2008.  *See* Defendants' First Amended Counterclaims, Doc. No. 124.  The

First Amended Counterclaims jettisoned all but the two counterclaims not enjoined,

defamation and tortious interference with business relationship.

After discovery, Defendants again sought to amend their counterclaims ostensibly

to conform the pleadings to information learned in discovery (the Second Amended

Counterclaims).  Unable to find support for allegations in the Second Amended

Counterclaims, Defendants dropped the contention that BCBSNC had made defamatory

statements to the Medical Board and to the CDC.  Instead, the Second Amended

Counterclaims changed the factual premise of the two remaining causes of action to

statements allegedly made by BCBSNC to members who were also patients of

Defendants and to other Blue Cross Blue Shield Association licensees.  To "avoid further

delays in this already drawn-out litigation," BCBSNC did not oppose that motion but

reserved its defenses including those under Rule 12(b)(6).  BCBSNC's Notice of No

Opposition, Doc. No. 296, at 2.

Once Defendants filed their Second Amended Counterclaims, BCBSNC again

sought to enforce the *Love* injunction before the U.S. District Court for the Southern

District of Florida.  Despite previously ruling that the original claims for defamation and

tortious inference did not relate to "fee for service" and allowing these two claims to go

forward, on this occasion, the *Love* Court agreed with BCBSNC that both the defamation

and the tortious interference claims were barred and enjoined the Second Amended

Counterclaims.  *Love v. Blue Cross & Blue Shield Ass'n*, No. 03-21296-CLV, 2014 WL

1028938, at *4 (S.D. Fla. Mar. 17, 2014).  The change in the *Love* Court's ruling was

occasioned not just by the change in the pled facts of the Second Amended

Counterclaims, but also due to an intervening decision by the Eleventh Circuit Court of

Appeals in a factually similar *Love* dispute, holding such claims to be within the scope of

the *Love* injunction.  *See id.*, at *3 (citing *Thomas v. Blue Cross and Blue Shield Ass'n

(Kolbusz)*, 594 F.3d 814 (11th Cir. 2010)).  Defendants did not appeal, and that order is

now final.

To comply with the *Love* Court's latest injunction, Defendants requested leave to

dismiss the Second Amended Counterclaims, which was allowed.  Doc. Nos. 383, 384.

Having no claims left against BCBSNC, Defendants then sought to amend their

counterclaims again to "re-instate" the First Amended Counterclaims that they previously

withdrew.  For its part, BCBSNC moved for entry of final judgment to end the action.

Just prior to the hearing on those motions, Defendants filed this sanctions motion,

requesting to be heard contemporaneously with the other matters.  BCBSNC objected to

the brevity of notice, and this court declined to hear the sanctions motions at that time.

That round of hearings resulted in this bankruptcy court issuing the aforementioned

proposed Findings of Fact and Conclusions of Law.  *See* Order of July 29, 2014, Doc.

No. 414.  That order is pending in the District Court.

Thereafter, Defendants renewed their sanctions request, and BCBSNC agreed that this motion need be decided, bringing us to the issues currently before this Court. Generally, this matter was presented on uncontested facts, mostly documentary evidence gleaned from the voluminous court records and countless pages of correspondence between the parties' attorneys. This decision has been delayed primarily because of the exhaustive review of the record required to evaluate the parties' numerous and rancorous assertions.

### Parties' Positions

Facing a potential dismissal with no affirmative recovery, Defendants make a last gasp effort to defray their monumental legal tab by asking this Court to sanction BCBSNC for (1) making misrepresentations to this bankruptcy court; (2) making misrepresentations to the U.S. District Court in the Southern District of Florida; (3) making misrepresentations to Defendants; (4) threatening baseless Rule 11 sanctions against Defendants; (5) abusing the discovery process; and (6) unnecessarily protracting this litigation. Defendants seek attorney's fees and costs in an amount to be determined at a later date. BCBSNC flatly denies each accusation. BCBSNC requests attorney's fees and costs pursuant to 28 U.S.C. § 1927 from Defendants for "unreasonably and vexatiously multiplying these proceedings."

### Analysis

Defendants seek sanctions pursuant to a bankruptcy court's inherent powers under 11 U.S.C. § 105. Under these inherent powers, a court may shift attorney's fees, but "only in the extraordinary circumstances." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 543 (4th Cir. 2002) (citing, *inter alia*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46

(1991)).  Among other reasons, "a court may assess attorney's fees when a party has "

'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Chambers*, 501

U.S. at 45-46 (citations omitted).  "In this regard, if a court finds 'that fraud has been

practiced upon it, or that the very temple of justice has been defiled,' it may assess

attorney's fees against the responsible party as it may when a party 'shows bad faith by

delaying or disrupting the litigation or by hampering enforcement of a court order.' " *Id.*

at 46 (citations omitted).

## I. Misrepresentations to this bankruptcy court

### A.  BCBSNC's Notice of No Opposition

Defendants first allege that BCBSNC misrepresented its intentions to this Court in

its Notice of No Opposition, Doc. No. 296, to Defendants' Motion for Leave to File a

Second Amended Counterclaim, Doc. No. 291.  This Court disagrees.  In its Notice of No

Opposition, BCBSNC stated that it believed Defendants' Motion for Leave was

meritless.  BCBSNC reserved its right to "challenge the merits of the Jemsek Defendants'

Second Amended Counterclaim once filed, including the right to assert that the amended

counterclaims fail to state claims upon which relief can be granted."  Put differently,

BCBSNC opposed the substantive basis and on-going validity of the amended claims, but

did not lodge a procedural objection hoping "to avoid further delays in this already

drawn-out litigation."  BCBSNC did not at that time assert that the Second Amended

Counterclaims were barred by the *Love* settlement.

Defendants suggest the omission of the *Love* settlement from BCBSNC's Notice

of No Opposition was nothing more than a dirty trick to persuade this Court to grant

Defendants' request to amend.  According to Defendants, BCBSNC was already planning

on opposing the filing in the Southern District of Florida at the time it filed its Notice of No Opposition.

Given BCBSNC's tactical nondisclosure about the split claims litigation, one can understand Defendants' fear that they may have been duped once again. However, there is no evidence in this record that indicates BCBSNC knew Defendants' Second Amended Counterclaims were enjoined when it filed its Notice of No Opposition nor did BCBSNC have a duty to speak to that point. BCBSNC's Notice of No Opposition amounts to, at the very worst, a poor explanation of its litigation strategy, which it had no obligation to detail in full at that stage in the litigation.

This situation is quite different than BCBSNC's previous attempt to engage in split claims litigation for which it was already sanctioned. There, BCBSNC was litigating the same claims in different forums. As this Court's previous ruling notes, such split claims litigation was tantamount to a fraud on its opponents and on the two courts. On this occasion, not only was there no duty to speak, but BCBSNC made clear that although it did not oppose Defendants' request to file amended pleadings, it did contest the substance of those arguments. Further, at this point, all parties and both courts were well aware of the *Love* settlement's broad reach. Both parties had extensively litigated the effect of *Love*, and it should have come as no surprise to anyone that BCBSNC would again reassert the *Love* settlement as a defense. While BCBSNC may not have explicitly stated that it intended to challenge the amended counterclaims as enjoined, it certainly alerted Defendants and this Court that it felt that Defendants "fail[ed] to state claims upon which relief c[ould] be granted." Thus, BCBSNC made no misrepresentations to this Court in its Notice of No Opposition.

**B. Timing of BCBSNC's disclosure that Defendants' Second Amended**

**Counterclaims were enjoined by the *Love* settlement**

Defendants next assert that BCBSNC's counsel misrepresented the timing of their

discovery that Defendants' Second Amended Counterclaims were enjoined by the *Love*

settlement in addressing this Court at the hearing related to BCBSNC's Motion to Stay,

Doc. No. 305, held on February 11, 2014.  On that occasion, BCBSNC had requested this

Court stay further proceedings in the litigation pending a decision from the *Love* Court on

whether Defendants' Second Amended Counterclaims were enjoined and also pending a

decision from our District Court on its Motion to Withdraw Reference of this proceeding.

Defendants have attempted to support their argument by parsing out single

sentences and phrases from BCBSNC's counsel's statements at that hearing.  But, it is

difficult to determine whether a statement is untrue without considering the context in

which it was made.  For background purposes, the two alleged misrepresentations were

made as part of the following statements by Mr. Daniel Taylor, counsel for BCBSNC:

> The *Love* release, as Your Honor knows, and the injunction
> is very broad and the Florida court was quite specific, I think three
> different times in its opinion, that the reason the defamation and
> tortious interference claims were not barred was because they were
> alleged to involve statements made to the North Carolina Medical
> Board and statements made to the Center for Disease Control,
> totally unrelated to billing or claim processing which was
> essentially the subject matter of the *Love* lawsuit.
>
> Now the evidence developed in discovery reveals that there
> is absolutely no basis for either of those defamation claims, either
> the defamation claim or the tortious interference claim.  That is,
> there were no improper statements made to either the medical
> board or to CDC.
>
> Realizing those claims were lacking, Jemsek moved, and
> the court allowed, we did not oppose, Jemsek to file a second

amended counterclaim changing the basis of the defamation claim to communications to . . . patients.

As we were preparing Blue Cross's motion for summary judgment, we realized that Jemsek's new claims were identical to the claims found by the Florida court in . . . Kolbusz [and] are barred by the *Love* injunction pursuant to an Eleventh Circuit decision.

When we concluded that these claims, that is, the Jemsek claims were barred, we contacted Mr. Blakely and requested that he withdraw those claims. We advised him that we had no objection to his returning to the claims that were advanced in the, if you will, first amended counterclaim. Now he respectfully declined and we filed the motion in Florida as I have previously described.

The Jemsek defendants contend that the second amended counterclaim does not change anything and that Blue Cross Blue Shield had somehow waived its right to raise lack of subject matter jurisdiction.

I respectfully suggest that those positions are both illogical and incorrect. If the second amended counterclaim did not change anything, there would have been no need to amend. Moreover, a casual reader can clearly discern that the second amended counterclaim can no longer contain allegations of defamation or tortious interference with regards to communications to the medical board or the Center for Disease Control.

Now, this is important because again the Florida court, in ruling on Jemsek's previous matter, was clear that the reason that the two claims, defamation and intentional interference with contractual relations, were not barred was because of the alleged communications to the North Carolina Medical Board and CDC.

Transcript of February 11, 2014 Hearing, at 5-6.

Specifically, Defendants contend BCBSNC's counsel's first misrepresentation as to the timing of their discovery that Defendants' Second Amended Counterclaims were enjoined was the statement to this Court that "[a]s we were preparing Blue Cross's motion for summary judgment, we realized that Jemsek's new claims were identical to

the claims found by the Florida court in . . . Kolbusz [and] are barred by the *Love*

injunction pursuant to an Eleventh Circuit decision." *Id*. at 6, ¶ 9-14.  That accusation

does not necessarily follow from what was said.  As explained in BCBSNC's response, it

appears that its attorneys were working on a motion for summary judgment for several

months—November 2013 through February 2014—during which BCBSNC also filed its

Notice of No Opposition and Defendants tendered their Second Amended Counterclaims.

Nothing in the record contradicts BCBSNC's assertion that it realized Defendants' new

claims were enjoined during that same window of time.  Moreover, when read in context

of the argument as a whole, it is clear that Mr. Taylor was merely describing the general

procedural history and recent developments in this action.  Mr. Taylor's casual, general

references to dates were in keeping with the subject matter of that hearing at which these

dates were of little importance.

    Next, Defendants assert that Mr. Taylor further misrepresented the timing of

BCBSNC's realization that Defendants' new claims were barred by *Love* when he said,

"[w]hen we concluded that these claims, that is, the Jemsek claims were barred, we

contacted [counsel for Defendants] and requested that he withdraw those claims." *Id*. ¶

15-17.  BCBSNC contacted Defendants on January 30, 2014.  According to Defendants,

BCBSNC knew the Second Amended Counterclaims were enjoined prior to filing its

Notice of No Opposition on January 6, 2014.

    Again, this record does not support that conclusion.  Regardless, like the previous

alleged misstatement, Mr. Taylor's remarks were generalized and vague.  As previously

discussed, Mr. Taylor was simply giving a quick recitation of the recent happenings in

the case.  It is doubtful that he intended to represent specific dates or to have this Court

calculate and then impute the precise timing of BCBSNC's realization based on these approximate statements in a hearing on an unrelated matter.

Defendants attempt to sever two vague sentences out of a lengthy argument to create a misrepresentation is simply a bridge too far.  Even taken out of context, these statements do not rise to the level of untruth and certainly not to the level of conduct worthy of sanction under *Chambers* and its progeny.

## II.  Misrepresentations to the *Love* Court

Defendants next claim counsel for BCBSNC misrepresented the scope of discovery to the U.S. District Court in the Southern District of Florida.  If so, Defendants should take the matter up with that court.  The court in which the alleged misrepresentations were made is far better equipped to address any such wrong.  Put bluntly, this bankruptcy court is not inclined to entertain this line argument, and its power to do so is questionable at best.  *See Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995) ("We do not consider the merits of [the defendants' sanctions request] because the district court did not have power to sanction conduct that occurred in a different court in a different case." (citations omitted)).

## III.  Misrepresentations to Defendants

### A.  BCBSNC's understanding of Defendants' defamation claims as related to statements made to patients versus statements made to the CDC and the Medical Board.

Defendant next asserts that counsel for BCBSNC made bad faith misrepresentations to them as opposing parties in a response to counsel for Defendants dated April 7, 2014.  Again, Defendants attempt to parse out certain phrases and

sentences to support their position when the overall context in which the statements were made is necessary to determine whether a misrepresentation occurred.

Counsel for Defendants began the exchange, writing:

> This short letter is to confirm your position on the 2nd Amended Counterclaims. I am filing today a Motion to Withdraw the 2nd Amended Counterclaims. I gather that you do not oppose that action, is that correct? Also, today I am filing a Motion to reinstate the First Amended Counterclaims. May I inform the Court that BCBSNC does not oppose this action, as well? Thank you.

Letter to Daniel R. Taylor of April 7, 2014, Doc. No. 399-4, Ex. 34. Counsel for BCBSNC, Mr. Taylor, responded the same day, indicating that BCBSNC would not oppose Defendants' Motion to Withdraw their Second Amended Counterclaims. Mr. Taylor then attempted to clarify some apparent points of confusion between the parties, one of which was BCBSNC's understanding of the basis of Defendants' defamation claims. Related to Defendants current accusations, Mr. Taylor wrote:

> [W]e have always interpreted the claims as pled in the First Amended Counterclaims exactly as Judge Moreno initially interpreted them on September 4, 2008, and the magistrate judge before him, namely that the First Amended Counterclaims "turn on the falsity of the statements made to the Medical Board and Center for Disease Control, and the resulting immediate and future harm to Dr. Jemsek's medical practice." To the extent that you contend the First Amended Counterclaims include anything other than direct statements allegedly made by BCBSNC to the Medical Board and/or the CDC, we will oppose your motion.

Letter to William D. Blakely of April 7, 2014, Doc. No. 399-4, Ex. 35.

According to Defendants, BCBSNC knew as early as January 14, 2012 that Defendants' claims were based on statements made to patients. Thus, Defendants believe that Mr. Taylor misrepresented BCBSNC's understanding of the defamation claims in his April 7, 2014 letter.

14

This dispute illustrates the sheer breadth of this action and resulting confusion between the parties and by this court about the claims brought by the two sides. Throughout this case, BCBSNC and Defendants were clearly not in the same book, much less on the same page, when it came to each other's theory and litigation strategy. As far as to whom the alleged defamatory remarks were made, much of that confusion is attributable to Defendants' inartfully pled counterclaim. For defamation, Defendants asserted that "[t]hese statements were made to, *among others*, the Medical Board and the Centers for Disease Control." Defendants' First Amended Counterclaim, Doc. No. 124, at 7, ¶ 37 (emphasis added). Thus, it comes as no surprise that BCBSNC assumed throughout this case that the claim was about statements to the Medical Board and the CDC. During discovery, BCBSNC was taken back when Defendants grafted the idea that misstatements were made to patients based upon the phrase "among others," especially when its original claim for defamation is entirely void of any mention of these individuals. *Id*. at 7-8, ¶ 35-41.

Based upon the arguments presented to it by the two sides, even the *Love* Court believed that Defendants' defamation claims "turn[ed] on the falsity of the statements made to the Medical Board and Center for Disease Control, and the resulting immediate and future harm to Dr. Jemsek's medical practice." *Love*, 2008 WL 4097607, at *8. This Court was confused as well. While Defendants quote bench remarks from previous hearings as indicating that at all times the patients were included, these references are pieced together responses to the parties' statements at hearings which were spread out over a period of eight years. From this Court's perspective, it was never clear and not decided whether statements to patients were part of the two counterclaims.

Confusion aside, the record is insufficient to find that Mr. Taylor's April 7, 2014

letter constituted sanctionable conduct.  The filings put forth are, at best, inconsistent as

to when BCBSNC knew Defendants intended to proceed on a theory that defamatory

statements were made to patients instead of the governmental agencies.  Moreover, even

if Mr. Taylor's statements were untrue, it is unclear whether that negatively impacted

Defendants in any way.  By that point in the litigation, Defendants had essentially entered

a blind canyon, having no alternative but to press ahead with their only remaining

counterclaims or face final judgment in favor of BCBSNC.  There is no reason to believe

any actions or statements by BCBSNC would have altered Defendants' course of conduct

at this late stage of the proceeding especially in light of the parties' complete breakdown

in communication and inability to cooperate.

### B.  BCBSNC's statement that it would not oppose Defendants' refiling their First Amended Counterclaims.

Defendants contend that Mr. Taylor made further misrepresentations to them by

email dated March 25, 2014.  Defendants characterize that email as stating "if the Jemsek

Defendants withdrew the Second Amended Counterclaims, BCBSNC would consent to

the Jemsek Defendants refiling the First Amended Counterclaims 'exactly as previously

pled.' "  Memorandum of Law in Support of Defendants' Motion for Sanctions, Doc. No.

394, at 9.  According to Defendants, BCBSNC made misrepresentations to Defendant by

then opposing Defendants' refilling, noted in the letter of April 7, 2014 copied in part

above.

Defendants have yet again attempted to create a misrepresentation by selectively

quoting phrases out of context.  Mr. Taylor's complete statement was as follows:

16

I had previously indicated that BCBSNC would consent to your withdrawing the Second Amended Counterclaims and proceeding with the First Amended Counterclaims (the specific pleading that was pending at the time the Jemsek Defendants moved to amend) but, given your argument before Judge Moreno that was rejected, our consent is limited to the extent that your arguments based on the First Amended Counterclaims do not violate the spirit and intent of Judge Moreno's most recent order. While I believe you will have to so move before the bankruptcy court, that offer is still on the table substantively, again, so long as you file the First Amended Counterclaims <u>exactly</u> as previously pled and you do not subsequently attempt to advance arguments that violate the spirit and intent of Judge Moreno's most recent order.

Email to William D. Blakely of March 25, 2014, Doc. No. 399-4, Ex. 31.

When Defendants subsequently attempted to advance arguments that were beyond the scope, or perhaps even inconsistent, with their First Amended Counterclaims and contrary to the *Love* injunction, BCBSNC refused to consent as Mr. Taylor indicated would occur in his email. Consequently, BCBSNC has not made a misrepresentation to Defendants.

**IV. Threatening Rule 11 Sanctions**

Defendants further contend each of five *threats* of Rule 11 sanctions made by BCBSNC constitute abuse entitling Defendant to sanctions. Of note, Defendants seek sanctions under this Court's inherent powers. They have not requested attorney's fees incurred as a result of prevailing on a Rule 11 motion presumably because BCBSNC never filed a motion with this Court for Rule 11 sanctions.

There appears to be little case law weighing whether a mere threat of Rule 11 sanctions is itself a sanctionable offense. Still, "[a] court may impose sanctions on its own initiative when the Rule is invoked for an improper purpose," *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3d Cir. 1987) (discussing Rule 11 in a case where sanctions

were requested by filed motion), and this Court is hesitant to say that repeated, baseless

Rule 11 threats are never subject to sanction.  Assuming for the moment that such threats

might fall within the ambit of a court's power to sanction, we consider Defendants'

assertions.

### A.  Letter of April 19, 2013 related to Defendants' Motion to Compel

On April 19, 2013, Defendants filed their Motion to Compel requesting BCBSNC

produce and reproduce certain discovery materials.  *See* Defendants' Motion to Compel,

Doc. No. 252.  By letter dated April 19, 2013, BCBSNC informed Defendants that it

intended to file a motion for Rule 11 sanctions, asserting that Defendants' motion was

frivolous and intended to drive up its litigation costs.  *See* Draft Motion for Rule 11

Sanctions of April 19, 2013, Doc. No. 399-2, Ex. 19.  Defendants claim BCBSNC's

threat was improper for an alleged discovery violation and caused them to incur

significant cost in responding.  However, this Court later noted that Defendants' Motion

to Compel was "essentially a proposal to undertake an eleventh hour fishing expedition in

hopes to netting something more to support their theories."  Order Denying Defendants'

Motion to Compel, Doc. No. 278, at 27.  That being the case, BCBSNC's threat of Rule

11 sanctions was not unfounded and certainly not worthy of sanction.

### B.  Letter of December 5, 2013 related to Defendants' First Amended
### Counterclaims

Next, Defendants point to Rule 11 threats made by BCBSNC on December 5,

2013 pertaining to Defendants' First Amended Counterclaim.  In that letter, BCBSNC

asserted Defendants' counterclaims were meritless because discovery failed to disclose

any instances of defamatory statements being made to a third party.  *See* Draft Motion for

Rule 11 Sanctions of December 5, 2013, Doc. No. 399-2, Ex. 17.  According to

Defendants, this Rule 11 threat was improper because a Rule 11 motion is not a proper

vehicle for arguing the merits of a case.  Yet, after receiving BCBSNC's letter,

Defendants sought leave to file their Second Amended Counterclaim.  Defendants stated

this was to conform the pleading to discovery, mainly to aver that the alleged defamatory

statements were made to patients and not the CDC or Medical Board as the First

Amended Counterclaims asserted.  By amending to cure the deficiencies noted in

BCBSNC's letter, Defendants essentially conceded that the threat of Rule 11 sanctions

was not baseless.  Thus, sanctions against BCBNC are not warranted in this instance

either.

### C.  Letter of December 31, 2013 concerning Defendants' Second Amended Counterclaims

Defendants additionally claim that BCBSNC's threat of Rule 11 sanctions on

December 31, 2013 were sufficient to justify sanctions against BCBSNC.  That letter was

closely tied to some of the issues related to BCBSNC's December 5, 2013 letter, which is

more fully addressed above.  On this occasion, BCBSNC asserted that Defendants'

Second Amended Counterclaim for defamation was meritless because at least several of

the alleged defamatory statements were admitted to be true by Dr. Jemsek.  As for

Defendants' claim of tortious interference with a business relationship, BCBSNC pointed

out that Dr. Jemsek conceded that he had no contracts with his patients and that claim

was therefore baseless.

The record provides little support to Defendants' claims that this particular threat

is sanctionable.  Much of BCBSNC's claims in this regard were indeed supported by

deposition testimony of Dr. Jemsek.  Moreover, after the Rule 11 threat, BCBSNC sought

assistance from the *Love* Court, which enjoined Defendants' claims, causing Defendants

to withdraw their Second Amended Counterclaims.

### D.  BCBSNC's Notice of No Opposition

Defendants assert that a single sentence in BCBSNC's Notice of No Opposition

rises to the level of sanctionable conduct.  That sentence being that "[t]he proposed

pleading is so devoid of merit that BCBSNC has placed counsel for the Jemsek

Defendants on notice that they have violated their duties to the Court required by Rule 11

of the Federal Rules of Civil Procedure and Rule 9011 of the Federal Rules of

Bankruptcy Procedure, and that BCBSNC intends to pursue a motion for sanctions after

the running of the 'safe harbor' period."  BCBSNC's Notice of No Opposition, Doc. No.

296, at 2.

However, beyond quoting a few select words from this sentence, Defendants

seemingly fail to allege the threat was wrongful and certainly provide no support or

argument for this Court to consider.  *See* Defendants' Memorandum of Law in Support of

Sanctions, Doc. No. 394, at 19.  Even so, for the sake of completeness, the subsequent

history of the case and the *Love* Court's enjoining Defendants' Second Amended

Counterclaims, as more fully discussed above, leads this Court to conclude that

BCBSNC's actions do not warrant sanctions for this particular threat.

### E.  Letter of April 7, 2014 pertaining to Defendants' refiling their First
### Amended Counterclaims

According to Defendants, Mr. Taylor's letter of April 7, 2014 contained a

sanctionable Rule 11 threat.  As previously detailed, that letter disclosed that BCBSNC

would not oppose Defendants' Motion to Withdraw their Second Amended

Counterclaims and attempted to clarify several points of confusion between the parties.

Letter to William D. Blakely of April 7, 2014, Doc. No. 399-4, Ex. 35.  In addition, Mr.

Taylor wrote:

> [Y]ou will recall that on December 5, 2013, we served you with a
> Rule 11 Motion for Sanctions. As we explained in the Motion and
> our corresponding letter, your pursuit of the claims contained in
> the First Amended Counterclaims do not satisfy your Rule 11
> obligations. You are well aware that there has never been any
> evidence that BCBSNC defamed or tortuously interfered with the
> Jemsek Defendants to anyone on the Medical Board or the CDC.
> Should you pursue claims relative to the Medical Board and CDC,
> we will proceed with filing this Rule 11 Motion for Sanctions with
> the court. Even if we do not oppose your filing of an amended
> counterclaim, it in no way means that we waive our right to seek
> Rule 11 sanctions should you be unsuccessful on those claims.

*Id*.

Defendants assert this threat was improper, but have not indicated on what basis.

As already stated, the record indicates that Defendants had no evidence to support their

assertion that BCBSNC defamed Defendants to the CDC or Medical Board.  Given the

events that have since transpired, including the *Love* Court enjoining Defendants'

counterclaims, there are no grounds to sanction BCBSNC for this or any of the other

aforementioned threats of Rule 11 sanctions.

As a final note regarding these Rule 11 threats, BCBSNC ultimately achieved the

result it sought each time, in some instances by Defendants' change in position and in

others by court order.  In that light, it would be difficult to conclude that BCBSNC's

conduct was wrongful.  While there appears to be no grounds to sanction BCBSNC, the

number of times BCBSNC lodged these threats is somewhat troubling.  The Court is

inclined to give BCBSNC the benefit of the doubt that perhaps it had tried other more

amenable methods and these threats were but a last resort.  Nonetheless, it is worth

repeating that the legal system unquestionably works most efficiently when parties are

able to cooperate and work together rather than threatening Rule 11 sanctions, even if

well-founded.  By contrast, both parties' tactics in this case are far from best practices

and both sides have exponentially driven up the cost of this litigation.

## V.  Abuse of the Discovery Process

Defendants claim that BCBSNC committed discovery violations related to

BCBSNC's relationship with Jeanne Rhyne, M.D. and the limited information BCBSNC

provided to Defendants about her.  Defendants argue such information was responsive to

one of its interrogatories that requested BCBSNC to:

> Identify each communication between BCBSNC and any
> professional medical group; patient groups or government entities
> (including but not limited to the NC Medical Board, IDSA, CDC,
> and NIH) with regard to the Jemsek Clinic, Dr. Jemsek, or the
> treatment, diagnosis and coverage of Lyme Disease . . . .

Defendants' Motion to Compel, Doc. No. 400, Ex. 10, ¶ 7.  According to Defendants,

"BCBSNC failed to produce information relating to its relationship with a Medical Board

member[, Dr. Rhyne,] who led the Medical Board's investigation and punishment of Dr.

Jemsek, while at the same time working as a BCBSNC consultant."[3]  Memorandum of

Law in Support of Defendants' Motion for Sanctions, Doc. No. 394, at 20.

Well after the close of discovery, Defendants requested information regarding Dr.

Rhyne specifically.  BCBSNC replied to Defendants' request on December 12, 2013 with

---

[3] Although Defendants make a passing reference to their Motion to Compel, Doc. No. 400, this sentence is
essentially the entire argument that appears in Defendants' Memorandum of Law in Support of their
Motion for Sanctions, Doc. No. 394.  BCBSNC argues that Defendants have thus waived this claim by
failing to develop it.  The Court agrees with BCBSNC, but for the sake of creating a complete record, the
merits of Defendants' claims will be evaluated anyway.

a detailed response fully explaining why the information sought was not discoverable. *See* Defendants' Motion to Compel, Doc. No. 400, Ex. 2.  In that response, BCBSNC indicated that Defendants' requests were neither relevant nor responsive to Defendants' interrogatory quoted above.  Furthermore, BCBSNC explained that Dr. Rhyne discontinued her review of medical policies in 2001 when she began to consult on appeals and grievances.  *Id*. at 2.  BCBSNC went on to write that several years later, in 2007, Dr. Rhyne began consulting on infectious diseases and did not provide input on Lyme disease until 2008, "long after BCBSNC terminated its provider contracts with the Jemsek Defendants."  *Id*.  Defendants, however, apparently never replied to BCBSNC's December 12 response, instead opting to wait approximately six months to file their Motion to Compel on May 12, 2014.[4]

For the purpose of weighing whether sanctions are appropriate, the Court adopts the timeline and characterization of Dr. Rhyne's employment presented by BCBSNC.  By Defendants' own concession in their Motion to Compel, Dr. Rhyne did not begin consulting on infectious diseases until June 2007, which is *after* Defendants filed their original counterclaims.  Defendants' Motion to Compel, Doc. No. 400, at 4.  Given that the information was requested after the end of discovery, Defendants' failing to respond to BCBSNC's explanation of why this information was not discoverable, the considerable length of time it took for Defendants to file their motion to compel, and the lack of a developed argument on why sanctions would be appropriate in Defendants' current motion, sanctions are not warranted for BCBSNC's alleged discovery violations.

---

[4] In keeping with their prior obstinance, the parties disputed the notice requirements and briefing schedule of this motion.  This Court eventually ordered Defendants to notice a hearing on the Motion to Compel, Doc. No. 402, but Defendants never did.  Given the current posture of the case, with Defendants having no remaining claims, that motion is now moot.

## VI.  Unnecessarily Protracting the Litigation

Finally, Defendants believe BCBSNC should be sanctioned for unnecessarily protracting this litigation by failing to be candid with this Court and for failing to raise the *Love* settlement in a timely fashion.  Many of Defendants' allegations harken back to those that resulted in this Court's previous order awarding sanctions entered on September 22, 2010.  This Court will not sanction BCBSNC for the same, albeit wrongful, conduct yet again.

Defendants' remaining contentions on this issue have been fully discussed above. To briefly summarize those points, so far as the current Motion for Sanctions is concerned, BCBSNC did not engage in any sanctionable conduct to protract this litigation.  Defendants' current allegations of misrepresentation are unfounded.  Much of the delay in raising the *Love* settlement to attack the Second Amended Counterclaims is attributable to the parties' contrasting opinions as to the scope of Defendants' defamation claims.  To be clear though, nothing in this order is to be construed to change or in any way alter this Court's order of September 22, 2010 in which it dismissed with prejudice BCBSNC's primary claims and taxed BCBSNC with a portion of Defendants' costs and attorney's fees as a sanction for, *inter alia*, BCBSNC's engaging in split claims litigation.

## VII.  BCBSNC's request for attorney's fees and costs pursuant to 28 U.S.C. § 1927

BCBSNC moves in its own right for costs and attorney's fees incurred in replying to this motion under 28 U.S.C. 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"Bad faith on the part of the attorney is a precondition to imposing fees under § 1927."

*E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012) (citations omitted).

Section 1927 " 'is indifferent to the equities of a dispute and to the values advanced by

the substantive law.' Instead, § 1927 'focuses on the conduct of the litigation' and 'is

concerned only with limiting the abuse of court processes.' " *Id*. (citations omitted).

Viewed through the lens of the bad faith standard, the record does not support an

award of attorney's fees in favor of BCBSNC as Defendants' motion does not approach

the level of abuse of court process.

## Conclusion

The current dustup is indicative of the course this action has taken from the day it

was filed. Neither side is blameless; in zealously seeking victory, both have skirted the

edges of ethical conduct, discovery rules, and the duty of candor. Many of the antics by

both sides are more befitting of a playground brawl than a federal court case. Even so, as

far as Defendants' current request for sanctions, the Court cannot find that a "fraud has

been practiced upon it, or that the very temple of justice has been defiled." *Chambers*,

501 U.S. at 46 (citations and quotation marks omitted). Defendants' request, however,

was not unreasonable or made in bad faith. Accordingly, both sides' demands for

sanctions are **DENIED**.

**SO ORDERED**

This Order has been signed
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.

United    States    Bankruptcy    Court